IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Jean Ritter, Dennis Webster,                    :
Robert Jastrzab, Randy Feldman,                 :
Susan Sheuerman, Chris Moen,                    :
Paul F. Banta, and James Herrick,               :
                                                :
        Petitioners,                            :
                                                :        MISC. CASE NO. 02-127
        v.                                      :
                                                :
United States Department of Justice,            :
                                                :
        Respondent.                             :

## UNITED STATES' PETITION FOR AN ORDER
## TO ENFORCE CIVIL INVESTIGATIVE DEMANDS

The United States respectfully petitions this Court for an Order to enforce Civil

Investigative Demand ("CID") Numbers 02-04 through 02-11 for the oral testimony of

petitioners Jean Ritter, Dennis Webster, Robert Jastrzab, Randy Feldman, Susan Sheuerman,

Chris Moen, Paul F. Banta, and James Herrick, all current and former employees of

AdvancePCS, formerly PCS Health Systems, Inc. (collectively referred to herein as

"AdvancePCS").[1]  The United States' petition is pursuant to 31 U.S.C. § 3733(j)(1).

Attorney General John Ashcroft, using his non-delegable authority, personally signed and

issued each CID so that the United States could obtain the oral testimony of petitioners in

connection with its investigation of AdvancePCS for violations of the False Claims Act, 31

U.S.C. §§ 3729-3733.  The CIDs were properly issued and they should be summarily enforced.

---

[1]        Mr. Herrick received CID No. 02-04, attached as Exhibit (Ex.") 1.  Mr. Jastrzab received CID No. 02-05, attached as Ex. 2.  Ms. Ritter received CID No. 02-06, attached as Ex. 3.  Mr. Webster received CID No. 02-07, attached as Ex. 4.  Ms. Sheuerman received CID No. 02-08, attached as Ex. 5.  Mr. Moen received CID No. 02-09, attached as Ex. 6.  Mr. Banta received CID No. 02-10, attached as Ex. 7.  Mr. Feldman received CID No. 02-11, attached as Ex. 8.

I.    **JURISDICTION AND VENUE**

1.    The United States does not dispute the description of jurisdiction and venue in petitioners' Petition for an Order Setting Aside the CIDs and incorporates them herein by reference.  Petition for an Order Setting Aside CIDs ("Pet. Setting Aside") ¶¶ 1-2.

II.    **PARTIES**

2.    The United States does not dispute the description of the parties in petitioners' Petition for an Order Setting Aside the CIDs and incorporates them herein by reference.  Pet. Setting Aside ¶¶ 3-10.  The United States adds to the description of the parties as follows.

3.    The United States Department of Justice is an agency of the executive branch of the United States.  5 U.S.C. §§ 101, 105, 500 and 551.  John Ashcroft is the Attorney General of the United States.  The Attorney General is authorized under 31 U.S.C. § 3733 to issue CIDs.

4.    To the best of the United States' knowledge and belief, Jean Ritter has held the titles of Director of Pharmaceutical Contracting and Support Director of Therapeutic Class Partnerships ("TCPs") while employed by PCS Health Systems, Inc.  Her current position at AdvancePCS is not known.  To the best of the United States' knowledge and belief, Ms. Ritter, *inter alia,* has been involved in the negotiation and administration of certain drug manufacturers' rebate agreements and other drug marketing program agreements.

5.    To the best of the United States' knowledge and belief, Dennis Webster has held the title of Manager of Pharmaceutical Contracting while employed by PCS Health Systems, Inc. His current position at AdvancePCS is not known.  To the best of the United States' knowledge and belief, Mr. Webster, *inter alia*, has been involved in the negotiation and administration of certain drug manufacturers' rebate agreements.

6.      To the best of the United States' knowledge and belief, Robert Jastrzab has held the titles of Director of Strategic Alliances and Director of Industry Marketing while employed by PCS Health Systems, Inc.  His current position at AdvancePCS is not known.  To the best of the United States' knowledge and belief, Mr. Jastrzab, *inter alia*, has been involved in negotiating agreements with drug manufacturers involving drug marketing programs other than the rebate agreements.

7.      To the best of the United States' knowledge and belief, Randy Feldman held the title of Manager of Pharmaceutical Contracting while employed by PCS Health Systems, Inc.  To the best of the United States' knowledge and belief, Mr. Feldman, *inter alia*, was involved in the negotiation and administration of certain drug manufacturers' rebate agreements.

8.      To the best of the United States' knowledge and belief, Susan Sheuerman has held the title of Manager of Pharmaceutical Contracting while employed by PCS Health Systems, Inc. Her current position with AdvancePCS is not known.  To the best of the United States' knowledge and belief, Ms. Sheuerman, *inter alia*, was involved in the negotiation and administration of certain drug manufacturers' rebate agreements.

9.      To the best of the United States' knowledge and belief, Christopher Moen held the titles of Manager of Pharmaceutical Contracting and Manufacturer Representative while employed by PCS Health Systems, Inc.  To the best of the United States' knowledge and belief, Mr. Moen, *inter alia*, was involved in the negotiation and administration of certain drug manufacturers' rebate agreements.

10.     To the best of the United States' knowledge and belief, Paul Banta held the title of Vice President of Strategic Alliances while employed by PCS Health Systems, Inc.  To the best

-3-

of the United States' knowledge and belief, Mr. Banta, *inter alia*, executed many of the rebate agreements with drug manufacturers and other drug marketing program agreements.

11.    To the best of the United States' knowledge and belief, James Herrick held the titles of Vice President of Contracting and Vice President of Strategic Contracting while employed by PCS Health Systems, Inc.  To the best of the United States' knowledge and belief, Mr. Herrick, *inter alia*, executed the majority of the rebate agreements with drug manufacturers and other drug marketing program agreements.

III.    **ISSUANCE AND SERVICE OF THE CIDs**

12.    On April 4, 2002, Attorney General John Ashcroft executed CID Nos. 02-04 through 02-11 for oral testimony of the petitioners.  See Exs. 1-8.  The CIDs were personally served by the United States Marshal's Service on petitioners between the dates of April 25, 2002 and May 10, 2002.  See Verified Return of Service for each petitioner, attached collectively as Ex. 9.

13.    The CIDs state that they were issued in the course of a False Claims Act investigation to determine whether there has been a violation of 31 U.S.C. § 3729.  The CIDs further state that the investigation concerns whether AdvancePCS or its predecessor, PCS Health Systems, Inc., knowingly caused the submission of false or fraudulent claims for payment to the Government, knowingly made or caused to be made a false record or statement to get a false or fraudulent claim paid by the Government, or conspired to defraud the Government by getting a false or fraudulent claim paid.  See Exs. 1-8.

14.    According to the CIDs, the oral testimony sought from each petitioner pertains to:

-4-

a.    the relationships between AdvancePCS, PCS Health Systems, Inc., and any affiliates and subsidiaries of them and the manufacturers whose drugs have been on or considered for the preferred drug formularies of AdvancePCS, PCS Health Systems, Inc., and their customer health plans and providers;

b.    the relationships between AdvancePCS, PCS Health Systems, Inc., and any affiliates and subsidiaries of them and their customer health plans and providers who have adopted their preferred drug formularies;

c.    the relationships between AdvancePCS, PCS Health Systems, Inc., and any affiliates and subsidiaries of them and the retail pharmacies that perform interventions in connection with their preferred drug formularies;

d.    audits performed by AdvancePCS, PCS Health Systems, Inc., and any affiliates and subsidiaries of them of retail pharmacies that perform interventions in connection with their preferred drug formularies;

e.    internal audits by AdvancePCS or PCS Health Systems, Inc., and external audits by drug manufacturers and/or health plans and providers of rebates paid in connection with the preferred drug formularies of AdvancePCS, PCS Health Systems, Inc., and any affiliates and subsidiaries of them; and

f.    the existence and location of documents and electronic records that relate to the relationships and audits identified in (a) through (e) above.

15.    The United States Attorney's Office for the Eastern District of Pennsylvania, together with the Offices of Inspector General of the United States Department of Health and Human Services ("HHS-OIG") and the United States Office for Personnel Management ("OPM-OIG"), has been conducting an investigation of AdvancePCS and its predecessor PCS Health Systems, Inc., since at least November 23, 1999 when an HHS-OIG subpoena was served on PCS Health Systems, Inc.

16.    The investigation concerns AdvancePCS's solicitation and receipt of secret payments from drug manufacturers for favorable treatment of specific brand name drugs in connection with AdvancePCS's contracts with health plans, including federal government health

plans, and pharmacies.  Among the patients insured by the federal plans are persons covered by

Medicaid Managed Care Organizations ("MCOs"), Medicare Plus Choice MCOs, Blue Cross

Blue Shield Association Federal Employee Plan, the Mail Handlers Health Benefit Plan, among

other federal program beneficiaries.

   17.  The solicitation and receipt of such payments may constitute violations of the

federal Anti-Kickback Act and the False Claims Act, among other civil and criminal laws.

   18.   The United States' investigation also concerns the therapeutic intervention (i.e.,

drug switching) practices of AdvancePCS involving certain brand name drugs contained on its

preferred drug formularies.

   19.  The CIDs issued by Attorney General Ashcroft seek evidence relevant to the

potential False Claims Act violations under investigation.

   20.  Attorney General Ashcroft, consistent with the requirements of 31 U.S.C.

§ 3733(a)(1), issued the CIDs on the belief that petitioners may be in possession, custody, or

control of information relevant to the false claims law investigation.  Further, Attorney General

Ashcroft issued the CIDs in writing, personally signed each CID, and caused them to be served

upon petitioners.  No civil proceeding under 31 U.S.C. § 3730 has been commenced against

AdvancePCS.

   21.  As explained in the accompanying memorandum of law, petitioners' willful

refusal to comply with the CIDs and to provide oral testimony is without justification and should

not be permitted by this Court.

IV.    **RELIEF REQUESTED**

WHEREFORE, petitioner, United States, respectfully requests this Court to:

1.    Order petitioners to provide oral testimony as required by the CID Nos. 02-04

through 02-11 within 14 days or as otherwise directed by the false claims investigators.

2.    Grant such other and further relief as this Court deems necessary and appropriate.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney


_____
JAMES G. SHEEHAN
Assistant United States Attorney
Chief, Civil Division


_____
BARBARA ROWLAND
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8311 Telephone
(215) 861-8349 Facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jean Ritter, Dennis Webster, | : | |
| Robert Jastrzab, Randy Feldman, | : | |
| Susan Sheuerman, Chris Moen, | : | |
| Paul F. Banta, and James Herrick, | : | |
| | : | |
| Petitioners, | : | |
| | : | MISC. CASE NO. 02-127 |
| v. | : | |
| | : | |
| United States Department of Justice, | : | |
| | : | |
| Respondent. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES' PETITION
TO ENFORCE THE CIVIL INVESTIGATIVE DEMANDS
AND OPPOSITION TO PETITIONERS' PETITION TO SET ASIDE CIDs**

The United States petitions this Court under 31 U.S.C. § 3733(j)(1) for an Order to

enforce Civil Investigative Demand ("CID") Numbers 02-04 through 02-11 for the oral

testimony of petitioners Jean Ritter, Dennis Webster, Robert Jastrzab, Randy Feldman, Susan

Sheuerman, Chris Moen, Paul F. Banta, and James Herrick, all current and former employees of

AdvancePCS, formerly PCS Health Systems, Inc. (collectively referred to herein as

"AdvancePCS").[1]  In addition, the United States opposes petitioners' request for an order of the

Court to set aside the same CIDs, and the United States opposes petitioners' request for

discovery.

Attorney General John Ashcroft, using his non-delegable authority, personally issued the

CIDs so that the United States could gather evidence through the oral testimony of petitioners for

its False Claims Act investigation of AdvancePCS.  See generally 31 U.S.C. §§ 3729-3733.  The

---

[1]       The CIDs for each petitioner are attached as Exhibits 1 through 8 of the United States' Petition for
an Order to Enforce Civil Investigative Demands.

CIDs were properly issued. The Attorney General's issuance of the CIDs is within his statutory authority; the CIDs are not too indefinite or overbroad; the testimony sought is relevant to the United States' False Claims Act investigation of AdvancePCS; and the CIDs were issued for a proper purpose. For those reasons, the CIDs should be summarily enforced.

The United States asks this Court to deny the Petition for an Order Setting Aside the CIDs because the petition is yet another dilatory and obstreperous tactic by AdvancePCS. This is the third enforcement action the United States has brought in this Court. Since its investigation began, the United States has not received a single document that it has sought from AdvancePCS or information from AdvancePCS employees whom its seeks to interview without bringing an enforcement action in this Court.[2] AdvancePCS's refusal to comply with properly issued subpoenas and its employees' refusal to comply with properly issued CIDs has substantially delayed and hindered the United States' investigation and has taken the valuable time of this Court.

AdvancePCS must be put on notice that neither this Court nor the United States will allow AdvancePCS to prevent the United States from conducting an investigation in a rapid and expeditious manner, particularly since that is the manner chosen by Congress for False Claims Act investigations. AdvancePCS attempts to force the United States into time-consuming, large-scale litigation before the United States has even had the opportunity to decide whether to proceed with a lawsuit against it. Such conduct subverts the statutory authority of the Inspectors

---

[2]     The United States notes that counsel for the petitioners in this proceeding has previously appeared as counsel for AdvancePCS in the earlier enforcement actions.

General of government agencies to investigate fraud and of the Department of Justice to gather

evidence in deciding whether to bring a False Claims Act action.

I.    **FACTUAL BACKGROUND**

On November 23, 1999, the Regional Inspector General, Michael E. Little, of the

Department of Health and Human Services Office of Inspector General ("HHS-OIG"), served a

subpoena for certain business records, financial information, and prescription drug information in

the possession of PCS Health Systems, Inc., in the exercise of the authority conferred upon him

by the Inspector General Act of 1978, 5 U.S.C. App. 3 § 6(a)(4). See Ex. 1 to Pet. to Enforce

Admin. Subpoena, United States v. PCS Health Systems, Inc., Misc. No. 00-MC-133 (E.D. Pa.,

filed Jun. 27, 2000). The subpoena was issued in connection with the United States' ongoing

investigation of AdvancePCS's receipt of drug manufacturer rebates and other secret payments

for brand name drugs that AdvancePCS had put on preferred drug formularies used by health

plans and pharmacies and of its therapeutic intervention (i.e., drug switching) programs. The

United States' investigation is concerned with the effect of such conduct on all persons covered

by Medicaid Managed Care Organizations ("MCOs"), Medicare Plus Choice MCOs, the Blue

Cross Blue Shield Association Federal Employee Plan, and the Mail Handlers Health Benefit

Plan, among other federal program beneficiaries.

On December 17, 1999, shortly before the return date of the subpoena, AdvancePCS

advised the United States that it would not produce any documents responsive to the subpoena.

See Dec. 17, 1999 Letter of Eugene Tillman to AUSA Barbara Rowland, attached as Ex. 1.

Subsequently, the United States and AdvancePCS engaged in discussions regarding the scope of

the subpoena and negotiations of a confidentiality agreement applicable to AdvancePCS trade

secrets, proprietary information, and confidential commercial information. As a result of these exchanges, the United States advised AdvancePCS that it could initially produce a smaller group of documents than those requested by the subpoena. See March 3, 2000 Letter of AUSA Barbara Rowland to Eugene Tillman and April 20, 2000 Letter of AUSA Barbara Rowland to Eric Dubelier, attached as Exs. 2 and 3, respectively. The United States and AdvancePCS were, however, unable to reach agreement on the terms of a confidentiality agreement.

After approximately six months of negotiation, AdvancePCS advised the United States on May 19, 2000, that it would not produce responsive documents unless the confidentiality agreement was entered as an Order of the Court. See May 19, 2000 Letter of Eric Dubelier to AUSA Barbara Rowland, attached as Ex. 4. On June 27, 2000, the United States filed a Petition to Enforce the Administrative Subpoena *Duces Tecum*. See Pet. to Enforce Admin. Subpoena, United States v. PCS Health Systems, Inc., Misc. No. 00-MC-133 (E.D. Pa., filed Jun. 27, 2000).

On March 13, 2001, this Court ruled on the United States' first petition to enforce the HHS-OIG subpoena. Order, United States v. PCS Health Systems, Inc., Misc. No. 00-MC-133 (E.D. Pa., filed Mar. 13, 2001) (hereafter, "Mar. 13, 2001 Order"). The Court entered a protective order and, in light of AdvancePCS's representation that it would voluntarily produce documents, the Court found that the United States' petition was moot. Id.

On March 19, 2001, AdvancePCS produced 27 boxes of documents. See March 19, 2001 Letter of Eric A. Dubelier to AUSA Barbara Rowland, attached as Ex. 5. At that time, AdvancePCS for the first time advised the United States that it would not be producing electronic

-4-

mail until the United States further narrowed its request for information governed by the subpoena.  Id.[3]

In the meantime, on March 8, 2001, the United States contacted counsel for AdvancePCS and asked to conduct voluntary interviews of James Herrick, Robert Jasztrab, Paul Banta and Susan Sheuerman.  See Mar. 8, 2001 Letter of AUSA Barbara Rowland to Eugene Tillman, attached as Ex. 6.  On March 20, 2001, AdvancePCS counsel responded that it required more information about the subject matter of the interviews before it could tell the United States whether its employees would agree to voluntary interviews.  On March 27, 2001, the United States advised AdvancePCS counsel that it sought to interview the employees about:

> . . . the contractual relationships between AdvancePCS and certain drug manufacturers, including Pfizer, Bristol Myers Squibb, Aventis, Novartis, Allergan, 3M, Abbott Laboratories, Forest, Bayer, American Home Products, Wyeth-Ayerst Laboratories, Takeda, Alcon, Knoll, and Eli Lilly.  The interview topics will include the strategic decision-making, the contract negotiation process, and compliance with governing law for drugs placed on the PCS national formulary and Performance Drug List and for drugs involved in Performance Mail, data outcomes, academic detailing, disease management programs, drug utilization review, Physician Connectivity, Performance Rx, data market research, product launches, senior initiatives, Resolve 500, RxReview, and therapeutic class partnerships.
>
> In addition, we would like to interview the individuals about PCS's relationships with health plans, plan sponsors, and government agency programs, such as Blue Cross Blue Shield Federal Employee Program.  Lastly, the individuals will be questioned about PCS's therapeutic interchange programs and its

---

[3]        On April 30, 2001, the United States requested AdvancePCS to produce "drug switching" documents that counsel for AdvancePCS had told the United States it collected for production prior to the dispute leading to the United States' first petition.  The "drug switching" documents, contained in about 60 boxes, were produced on June 4, 2001.

> dealings with pharmacy chains and individual pharmacists in carrying out those programs.
>
> We expect that the interviews will cover the individuals' knowledge from approximately 1995 to the present.

See Mar. 27, 2001 Letter of AUSA Barbara Rowland to Eric Dubelier, attached as Ex. 7.  The

United States also asked to interview AdvancePCS employees James Parker and Christopher

Moen.  Id.

On March 28, 2001, AdvancePCS counsel responded that, in its view, the United States

had not reasonably clarified the scope of its intended interviews and complained that the United

States' interviews would address every aspect of AdvancePCS's business with drug

manufacturers, health plans, and pharmacies.  See Mar. 28, 2001 Letter of Eric Dubelier to

AUSA Barbara Rowland, attached as Ex. 8.  AdvancePCS counsel requested that the United

States respond to the following eight questions:

1.   Is AdvancePCS the target or subject of a criminal investigation?

2.   Do any business practices of AdvancePCS currently known to the government expose AdvancePCS to civil or administrative liability?

3.   Are any of the individuals named in your letter targets or subjects of a criminal investigation?

4.   Do any business practices of AdvancePCS currently known to the government expose any of the individuals named in your letter to civil or administrative liability to the government?

5.   Who will be present at the proposed interviews?

6.   How will the interviews be memorialized?

7.   Will the witnesses be placed under oath?

8.    Will the interviews be subject to the Protective Order?

Id.

On March 29, 2001, the United States responded to AdvancePCS's letter:

> [T]he United States is conducting a civil investigation of possible fraud and other violations of law by PBMs regarding their financial relationships with pharmaceutical manufacturers, health plans and sponsors, and pharmacy chains. In particular, the investigation concerns the PBMs' financial gain through its contractual arrangements with the pharmaceutical manufacturers, health plans or sponsors, and pharmacy chains at the expense of the plans and their beneficiaries and without regard to adverse health consequences to beneficiaries. Also, the investigation concerns the PBMs' efforts to assure that the pharmacies obtain the appropriate approvals for drug interchanges.
>
> The United States will not provide you with more detailed information about its investigation. Each of the individuals we have asked to interview are witnesses.
>
> We will advise you of the persons who will attend the interviews on behalf of the United States once we are told that the interviews will take place. All persons will be Department of Justices attorneys, contract experts and legal assistants and agents of federal law enforcement authorities. We are not asking that the interviews be transcribed by a stenographer or audio or video recorder; however, if you would like such transcription, we would not object. The witnesses will not be placed under oath, but they will be advised of the importance of telling the truth in the context of the interview. Lastly, to the extent the witnesses are shown documents covered by the protective order, that portion of the interview and the document will be treated in accordance with the provisions of the protective order.

See Mar. 29, 2001 Letter of AUSA Barbara Rowland to Eric Dubelier, attached as Ex. 9.

On April 6, 2001, AdvancePCS counsel responded to the United States' letter by stating,

in part, "As a result of your unwillingness to engage in any productive discussions or reasonable

narrowing of your request, and given the apparent bias and predisposition of your office

-7-

regarding this matter, AdvancePCS is unable to comply with your request at this time. If and when the government further refines its request we will be happy to discuss this matter with you." <u>See</u> Apr. 6, 2001 Letter of Eric Dubelier to AUSA Barbara Rowland, attached as Ex. 10. The United States replied on April 24, 2001 that with respect to AdvancePCS's concerns about the "bias and predisposition," the U.S. Attorney's Office had "not reached any conclusions at this time about violations of law by PCS arising from its rebate agreements and other financial arrangements with pharmaceutical manufacturers." <u>See</u> Apr. 24, 2001 Letter of AUSA Barbara Rowland to Eric Dubelier, attached as Ex. 11.

On July 30, 2001, the United States requested AdvancePCS to produce electronic mail relating to its strategic contracting department and eight individuals, and the United States further limited that category of documents by seeking only the electronic mail relating to specific contractual relationships between AdvancePCS and specific drug manufacturers, health plans, and pharmacies for the period 1995 to the date of the subpoena. <u>See</u> Jul. 30, 2001 Letter of AUSA Barbara Rowland to Eric A. Dubelier, attached as Ex. 12. The eight individuals whose electronic mail the United States seeks are the petitioners: James Herrick, Robert Jastrzab, Susan Sheuerman, Christopher Moen, Jean Ritter, Dennis Webster, Paul Banta, and Randy Feldman.

AdvancePCS, on September 11, 2001, advised the United States that it would not produce the requested electronic mail because (1) it deemed the task "monumental and costly," and (2) the United States had not identified any statute or regulation that AdvancePCS has violated. <u>See</u> Sept. 11, 2001 Letter of Eric A. Dubelier to AUSA Barbara Rowland, attached as Ex. 13.

By letter of September 26, 2001, the United States asked AdvancePCS to explain why gathering the requested electronic mail was "monumental and costly" and the United States reiterated its broad authority to investigate under the Inspector General Act, as interpreted by the Supreme Court and the U.S. Court of Appeals for the Third Circuit.  See Sept. 26, 2001 Letter of AUSA Barbara Rowland to Eric A. Dubelier, attached as Ex. 14.

AdvancePCS continued to refuse to produce any electronic mail, even though by letter of October 12, 2001, it stated that it was not refusing to produce electronic mail, but waiting for the United States to limit the scope of its request.  See Oct. 12, 2001 Letter of Eric A. Dubelier to AUSA Barbara Rowland, attached as Ex. 15.

On December 21, 2001, the United States filed a Renewed Petition for Summary Enforcement of an Administrative Subpoena Duces Tecum on behalf of the HHS-OIG to obtain judicial enforcement of its subpoena.  See Renewed Pet. for Summ. Enforcement of an Admin. Subpoena, United States v. PCS Health Systems, Inc., Misc No. 00-MC-133 (E.D. Pa., filed Dec. 21, 2001).  That petition is currently pending before this Court.

The United States argued in the petitions's supporting memorandum that the electronic mail requested fell within the terms of the subpoena and is needed by the United States to investigate alleged secret payments between AdvancePCS and drug manufacturers for favorable treatment of certain brand name drugs in AdvancePCS's contractual relationships with health plans and pharmacies.  Id.  The United States further argued that it should not have to limit the scope of its request any further, and should not have to do so without an explanation from AdvancePCS addressing the reasons why it cannot produce the requested material.  Id.

On April 4, 2002, Attorney General Ashcroft issued eight CIDs directed to the petitioners. See United States' Petition for an Order to Enforce Civil Investigative Demands ("Pet. to Enforce CIDs"), Exs. 1-8.  The CIDs were served personally on each petitioner by the United States Marshal's Service between April 25, 2002 and May 10, 2002.  See Pet. to Enforce CIDs, Ex. 9.

On May 15, 2002, twenty days after the first CIDs were served, petitioners filed a Petition for Order Setting Aside the CIDs arguing (1) the United States' investigation is not a legitimate basis for issuance of a False Claims Act CID because AdvancePCS does not submit "claims" to the United States and it has made no "false" representations to entities contracting with the United States; (2) the CIDs are fatally vague because they fail to identify the nature of the conduct constituting the alleged false claims violation and they are fatally overbroad because they seek information beyond government health plans; and (3) enforcing the CIDs would be an abuse of the Court's process because the United States' investigation is based on improper motives.  Pet. Setting Aside at 12-13.

None of petitioners' arguments warrant setting aside the CIDs.  Accordingly, the United States files this Petition for an Order to Enforce the CIDs and its opposition to petitioners' Petition for an Order to Set Aside the CIDs.

## II.    THE CIDs ARE PROPER AND ENFORCEABLE

### A.    Standard of Review for CIDs Is That Applicable to Administrative Subpoenas

The Court shall apply the same law applicable to administrative subpoenas in actions to enforce a CID.  See United States v. Markwood, 48 F.3d 969, 975-76 (6th Cir. 1995) ("a false

claims CID is, at its essence, a subpoena issued by an administrative agency"); United States v.

Witmer, 835 F. Supp. 208, 220-21 (M.D. Pa. 1993), aff'd, 30 F.3d 1489 (3d Cir. 1994).

While the Court must do more than "rubberstamp" the administrative subpoena, the

Court's review of an agency subpoena is extremely limited.  Witmer, 835 F. Supp at 220

(citations omitted).  According to the Witmer court, CIDs should be enforced under the following

standard:

> In [United States v. Morton Salt Co., 338 U.S. 632 (1950)], the
> court held that such subpoenas should be enforced if the court
> determines that "the inquiry is within the authority of the agency,
> the demand is not too indefinite and the information is reasonably
> relevant" to the agency's inquiry.  [338 U.S. at 652.]  In other
> words, the court must determine whether "the court's process
> would not be abused by enforcement."  SEC v. Wheeling-
> Pittsburgh Steel Corp., 648 F.2d 118, 125 (3d Cir. 1981).  In the
> CID context, the Department [of Justice] also must show that it has
> complied with the specific statutory procedures for issuance of the
> CID, i.e., issuance by the Attorney General.  This level of review
> provides a CID recipient with her or her "day in court."

Witmer, 835 F. Supp. at 220-21.  In considering administrative subpoenas, the United States

Court of Appeals for the Third Circuit has established a similar standard: the subpoena should be

enforced if it (1) is within the agency's statutory authority, (2) seeks information reasonably

relevant to the inquiry, (3) is not unreasonably broad or burdensome, and (4) is not issued for an

improper purpose, such as harassment.  United States v. Westinghouse Elec. Corp., 788 F.2d

164, 166-67 (3d Cir. 1986).  This Court previously adopted that standard in its Mar. 13, 2001

Order at 8-9.[4]

---

[4]    Congress modeled the False Claims Act CID provision after the CID statute for antitrust
investigations and intended that the legislative history and case law governing antitrust CIDs also apply to false
claims CIDs.  United States v. Markwood, 48 F.3d 969, 976 (6th Cir. 1995).

-11-

B.      **The CIDs Are Within the Attorney General's Authority**

Section 3733(a)(1) of Title 31 of the United States Code provides that:

> Whenever the Attorney General has reason to believe that any
> person may be in possession, custody or control of any
> documentary material or information relevant to a false claims law
> investigation, the Attorney General may, before commencing a
> civil proceeding under section 3730 or other false claims law, issue
> in writing and cause to be served upon such person, a civil
> investigative demand requiring such person – . . .
>
> (C)      to give oral testimony concerning such documentary
>          material or information, . . .

The United States attempted to arrange for voluntary interviews of AdvancePCS employees but AdvancePCS would not agree to those interviews.  See Exs. 6-11.  The United States had no option but to assert the CID power of the Attorney General.

Attorney General John Ashcroft properly applied his non-delegable authority in issuing the CIDs.  He personally determined that the CIDs were needed because petitioners may have information relevant to the United States' investigation of AdvancePCS's therapeutic intervention programs and its financial relationships with drug manufacturers, including its solicitation and receipt of rebates and secret payments for putting certain brand name drugs on AdvancePCS's preferred drug formularies.  The CID recipients' knowledge is likely to be relevant to the investigation because they are current and former employees of AdvancePCS's Strategic Alliances or Strategic Contracting departments, and they were identified by witnesses as being involved in negotiating or managing the rebate agreements and other contracts between drug manufacturers and AdvancePCS for those brand name drugs.

The other elements of the provision are also satisfied.  The United States has not yet commenced a civil proceeding against AdvancePCS under the False Claims Act, and it has not yet determined whether it would bring such a proceeding.  The Attorney General issued the CIDs in writing, personally signing each one (see Exs. 1-8 of the Petition to Enforce), and the CIDs were properly served by United States marshals (see Ex. 9 of the Petition to Enforce).

Because of the summary nature of enforcement proceedings, no other showing is necessary by the United States to obtain enforcement of the CIDs.

**1.    Petitioners Wrongfully Seek A Ruling On Ultimate Merits of Potential False Claims Act Case by United States**

Petitioners' arguments that AdvancePCS does not file "claims" with a government agency and it has made no "false" representations to a government agency have nothing to do with whether the Attorney General properly exercised his CID authority in determining that the eight CID recipients had information relevant to a false claims investigation.  Petitioners would have the United States prove every element of a False Claims Act cause of action against AdvancePCS before the United States has even had an opportunity to complete a false claims investigation.  There is no support for petitioners' position in law, and their position is not a cognizable basis for a petition to set aside the CIDs.

As a preliminary matter, petitioners raise arguments that are essentially in defense of AdvancePCS and have nothing to do with any failure of the CID to comply with the provisions of 31 U.S.C. § 3733 or any constitutional or other legal right or privilege of any petitioner.  See

31 U.S.C. § 3733(j)(2)(B). This situation may have come about because petitioners are represented by the same attorneys as AdvancePCS.[5]

More importantly though, the United States is not required to demonstrate an offense or statutory violation in order to investigate whether one has occurred. Petitioners' arguments are better made in a motion to dismiss a complaint and are not a proper basis for a petition to set aside an investigative tool, such as a CID.[6]

The Third Circuit has repeatedly followed Supreme Court precedent in finding that agencies of the United States may "'investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'" See, e.g., Federal Deposit Insurance Co. v. Wentz, 55 F.3d 905, 908 (3d Cir. 1995), quoting United States v. Powell, 379 U.S. 48, 57-58 (1964) and United States v. Morton Salt Co., 338 U.S. 632, 652 (1950). In Wentz, the Third Circuit, without deciding the issue of whether the agency in that case was required to assert an "articulable suspicion of liability," stated that the United States need not, in most instances, show liability before seeking enforcement of a subpoena. 55 F.3d at 908, 909. Similarly, the Third Circuit in United States v. Oncology Services Corp., 60 F.3d 1015 (3d Cir. 1995), reinforced the agency's right to investigate by subpoena even when that agency had previously closed its investigation of the subpoenaed party. 60 F.3d at 1019-20. The Third

---

[5]     The United States has advised counsel for petitioners and AdvancePCS that its multiple representation raises a potential conflict of interest. See May 23, 2002 Letter of AUSA Barbara Rowland to Eric Dubelier and Eugene Tillman, attached as Ex. 16. Counsel for petitioners and AdvancePCS has responded to the United States' letter. See May 28, 2002 Letter of Eric Dubelier to AUSA Barbara Rowland, attached as Ex. 17.

[6]     AdvancePCS made this same inappropriate argument in refusing to provide the United States with electronic mail responsive to the HHS-OIG administrative subpoena.

Circuit found that the district court was required to enforce the subpoena so long as the

information sought was not irrelevant to any lawful purpose of the agency.  Id. at 1020.

      Courts in other circuits are in accord.  In United States v. American Target Advertising,

Inc., 257 F.3d 348 (4th Cir. 2001), the Fourth Circuit rejected a target corporation's argument that

it need not comply with an agency investigative subpoena because the government was

investigating the alleged violation of an invalid rule.  The Fourth Circuit noted that the target's

reasoning "places the cart before the horse" because the scope of a subpoena enforcement action

is narrow and does not include a determination of the underlying claim on the merits.  257 F.3d

at 353.  The court explained that by providing agencies with subpoena power, Congress weighed

the competing interests of potential harm to an investigative target and the public interest in

expeditiously investigating potential fraud.  Id. at 353-54.  Congress chose in favor of the

"effective administration and enforcement of its laws." Id. at 354.  See also Federal Trade

Commission v. Ken Roberts, Co., 276 F.3d 583, 584 (D.C. Cir. 2001) ("With rare exceptions

(none of which applies here), a subpoena enforcement action is not the proper forum in which to

litigate disagreements over an agency's authority to pursue an investigation"); Commodity

Futures Trading Commission v. Tokheim, 153 F.3d 474, 477 (4th Cir. 1998), cert. denied, 525

U.S. 1122 (1999) (appeals court upheld enforcement of subpoena rejecting respondent's

argument that he was exempt from the Commodity Exchange Act because his argument

"conflates the issue of whether the Commission may investigate to determine whether conduct

falls within its jurisdiction with the ultimate issue of whether conduct does in fact fall within its

jurisdiction"); Houston Industries v. Kaufman, Civ. A. No. H-95-5237, 1996 WL 580418 *2

(S.D. Tx. Mar. 7, 1996) (Antitrust Division CID enforced because court found it was premature

to consider the application of an immunity doctrine before the investigation was complete and a Sherman Act violation charged); Maccaferri Gabions, Inc. v. United States, 938 F. Supp. 311, 319 (D. Md. 1995) (in Antitrust Division CID enforcement action, court held that "[t]his is not the occasion to adjudicate, even on a *prima facie* standard, the substantive merits of any possible antitrust case" and "[n]or does the Court find it necessary to require the Antitrust Division to present the basis for its investigative interests").

The United States has repeatedly provided counsel for petitioners and AdvancePCS with information about what it is investigating. AdvancePCS and, in this instance, petitioners have sought to forestall that investigation in every way possible. They are turning on its head the need for rapid and expeditious investigations and summary enforcement proceedings. See Markwood, 48 F.3d at 979 (scope of enforcement proceeding is narrow because of important government interest in expeditious investigations); Witmer, 835 F. Supp. at 213 (because CIDs were intended to allow Department of Justice to conduct pre-complaint investigations in an efficient and cost-effective manner, "dilatory or obfuscatory tactics should not be condoned or encouraged by the courts"). By advancing arguments that are patently contrary to every judicial decision governing subpoena or CID enforcement, AdvancePCS and petitioners undermine the United States' legitimate interest in conducting investigations expeditiously and with the investigative tools Congress specifically made available. The Court must grant this petition to enforce as soon as possible to bring petitioners' dilatory tactics to a quick end.

2.    **The "Claim" Requirement of the False Claims Act Is Met**

Even if this Court were to consider AdvancePCS's arguments that it must file a "claim"

with a government agency containing a "false" representation for the Attorney General to have

properly issued the CIDs, those arguments fail too.

The United States Office of Personnel Management ("OPM") contracts for health benefit

services for federal beneficiaries with several health plan administrators, including Blue Cross

Blue Shield Association ("BCBSA") Federal Employee Plan and Claims Administration

Corporation ("CAC") for the Mail Handlers' Benefits Plan.  HHS contracts with Medicaid

MCOs and Medicare Plus Choice MCOs.  Federal funds are used by OPM and HHS to pay the

health plan administrators for providing health benefit services, and the health plan

administrators, in turn, pay AdvancePCS, among others, for pharmacy health benefit services.[7]

---

[7]    Contrary to petitioners' contention that AdvancePCS merely facilitates payments between pharmacies and health plan administrators, AdvancePCS prepares several types of claims that it submits to the health plan administrators and that draw on federal funds for payment.

Using BCBSA as an example, AdvancePCS submits at least three types of claims to BCBSA that impact the federal fisc.  First, AdvancePCS presents claims to BCBSA for prescriptions, including those of the brand name drugs on its preferred drug formularies, filled by pharmacies for plan members.  BCBSA makes a payment determination based on specific eligibility criteria provided by AdvancePCS in each claim.  BCBSA pays AdvancePCS, which then pays the pharmacies.  See, e.g., 1999 Managed Retail Prescription Drug Benefit Program Contract between BCBSA Federal Employee Plan and AdvancePCS, at D.20–D.30.  This document is not attached as an exhibit because it may contain business confidential information.  AdvancePCS likely has a copy of the document, and the United States will provide a copy to the Court upon its request.

Second, AdvancePCS submits invoices to BCBSA for its administrative fees for managing pharmaceutical claims and for successful therapeutic interventions, among other services.  Id. at C.20 ¶ 2.5.1.1

Third, AdvancePCS provides notice to BCBSA each time it receives manufacturer rebates and sends BCBSA 100 percent of the manufacturer rebates attributable to federal employee claims.  Id. at C.6 ¶ 1.4.

BCBSA receives funding for health benefit services for eligible federal beneficiaries from the Federal Health Benefits Fund ("the Fund"), which is administered by OPM under the Federal Employee Health Benefits Act, 5 U.S.C. §§ 8901, 8909.  The Fund is part of the United States Treasury, and it was statutorily created to pay the expenses of the Federal Employee Health Benefits ("FEHB") Program, which provides health benefits to federal employees, annuitants and their dependents.  5 U.S.C. §§ 8905, 8909(a).  Congress does not appropriate monies directly to the Fund.  Federal employees have a premium payment for their respective plans withheld each payday.

-17-

AdvancePCS makes much of its failure to present claims for payment directly to a federal agency for the pharmacy benefit management services. AdvancePCS ignores that the legislative history of the 1986 amendments to the False Claims Act and the case law interpreting the Act do not require such direct claims. The False Claims Act has consistently been interpreted to include claims for payment made on third parties that receive federal funds for the services to be provided. BCBSA, CAC, and Medicaid and Medicare Plus Choice MCOs are the third parties in this case.

Prior to 1986 amendments to the False Claims Act, the Supreme Court and other federal courts consistently refused to narrowly interpret the provisions or the application of the Act. See United States v. Neifert-White Co., 390 U.S. 228, 232 (1968) (False Claims Act "was intended to reach all types of fraud, without qualification, that might result in financial loss to the Government"); United States ex rel. Marcus v. Hess, 317 U.S. 537, 541 n.5 (1943) (False Claims Act is "remedial" statute "intended to protect the treasury against the hungry and unscrupulous host that encompasses it on every side, and should be construed accordingly").

In the 1986 amendments to the False Claims Act, Congress expressly reiterated that the Act was to be broadly interpreted. The purpose of the 1986 amendments was "to enhance the

---

The payment is forwarded to the Fund by the employing agency, along with the agency's share of the premium, which is allocated from the agency's salary and expense funds. 5 U.S.C. § 8906(d), (e).

While the Fund is available without fiscal year limitation to pay health benefits, Congress annually may limit the amount of the Fund available to OPM to pay the costs of administering the FEHB Program. 5 U.S.C. § 8909(a). Each FEHBP health insurance plan has its own allocation in the Fund, which is divided into two portions: (1) a portion to reimburse the FEHB plan carrier for benefits paid or to pay premiums to a FEHB plan carrier depending on the type of plan and, (2) a contingency reserve portion that may be used to defray increases in future rates or may be applied to reduce the premiums or to increase the benefits provided by the plan. 5 U.S.C. § 8909(b). In addition, another portion is set aside to fund the administrative expenses of OPM. Id. Any portion of the Fund not used by OPM during a fiscal year is added to the contingency reserves of the plans the next fiscal year. The income derived from dividends, rate adjustments, or other refunds made by a plan are credited to the plan's contingency reserve. Id.

Government's ability to recover losses sustained as a result of fraud against the Government."

S. Rep. No. 345, 99th Cong., 2d Sess., 1, reprinted in, 1986 U.S.C.C.A.N. 5266 (1986). To

accomplish its goal, Congress overturned judicial decisions excluding from the Act's coverage

claims submitted to public or private third parties receiving fixed government payments and

decisions excluding reverse false claims. See 1986 U.S.C.C.A.N. at 5283-84, 5286-87.

Congress added subsection (c) to § 3729 defining "claim" as "any request or demand,

whether under a contract or otherwise, for money or property which is made to a contractor,

grantee, or other recipient if the United States Government provides any portion of the money or

property which is requested or demanded, or if the Government will reimburse such contractor,

grantee, or other recipient for any portion of the money or property which is requested or

demanded." 31 U.S.C. § 3729(c). In doing so, Congress stated that it intended to overrule the

Seventh Circuit's decision in United States v. Azzarelli Const. Co., 647 F.2d 757 (7th Cir. 1981),

which held that because the federal contribution to highway construction was a fixed sum rather

than open-ended, the United States could not sue contractors for a bid-rigging conspiracy. 1986

U.S.C.C.A.N. at 5287. Congress explicitly stated the Act could be used to reach fraud

perpetrated on federal grantees, contractors or other recipients of federal funds. Id.

By amending the Act to add § 3729(a)(7), Congress clarified its position with respect to

the viability of reverse false claims. 1986 U.S.C.C.A.N. at 5283. Section 3729(a)(7) provides

that a person "who makes a material representation to avoid paying money owed the Government

would be equally liable under the Act as if he had submitted a false claim to receive money."

Thus, AdvancePCS's submission of invoices to prime contractors for administrative fees

and therapeutic interventions are "claims" for payment to the United States because the Federal

-19-

Employee Plan operated by BCBSA is funded by the federal fisc, the Mail Handlers' Benefit

Plan managed by CAC is federally funded, and Medicaid and Medicare Plus Choice MCOs

receive federal funds.  Congress has said it is of no significance whether the federal funding is

fixed or capitated.  Furthermore, AdvancePCS's payment of drug manufacturer rebates to

BCBSA, CAC, or the Medicaid and Medicare Plus Choice MCOs are also "claims" under a

reverse false claims analysis because underpaying those rebates is avoiding paying money owed

to the United States.[8]

### 3.    The "False" Representation Requirement of the False Claims Act Is Met

Petitioners erroneously contend that AdvancePCS makes no "false" representations

because it does not provide the health plan administrators with any information that would affect

the United States' funding of the health benefits provided by the health plan administrators.

Petitioners are factually wrong because the United States' investigation so far, even though

limited by AdvancePCS's tactics, has disclosed that AdvancePCS may have made false

representations to the United States' health plan administrators regarding the rebates due from

drug manufacturers.  The United States has information that at least with respect to two major

drug manufacturers, rebates due to AdvancePCS for the benefit of federally funded health plans,

such as BCBSA, CAC, and the Medicaid and Medicare Plus Choice MCOs, were diverted to pay

the debts of Rite-Aid Corporation, the former parent of PCS Health Systems, Inc.  This conduct

occurred in 1999 and 2000 and involved rebates valued at tens of millions of dollars.  This

---

[8]    Drug manufacturer rebates are added to the reserves of the health plans for the benefit of the federal plan members.  5 U.S.C. § 8909(b).

-20-

information involves understating rebates due to government contractors and can form the basis for a False Claims Act violation under § 3729(a)(1), (2), (3), and (7).

Furthermore, petitioners' argument that AdvancePCS makes no "false" representations is premature. Every case cited by petitioner in support of its argument was made on a motion to dismiss a false claims complaint or a summary judgment motion.[9] No case addresses the need for showing a "false" representation during the investigation of a potential false claims case.

### C.    The CIDs Are Not Too Indefinite or Overbroad

Petitioners state that they cannot ascertain what information is sought by the CIDs and, therefore, they are unable to identify constitutional or other rights and privileges that might be jeopardized by complying with the CIDs. Pet. Setting Aside at 25-27. Petitioners are, at best, disingenuous. They are represented by the same counsel for AdvancePCS that engaged in two months of negotiations, including the exchange of seven letters, with the U.S. Attorney's Office in an effort to obtain voluntary interviews. During the course of those negotiations, the United States sufficiently advised petitioners' counsel about what AdvancePCS business, manufacturer relationships, and drug marketing programs it sought to interview petitioners. See Exs. 6, 7, 9 and 11.[10] Furthermore, petitioners demonstrate their comprehension of what information the

---

[9]    The bulk of petitioners' argument is essentially a lack of materiality argument and, contrary to the authority cited by petitioners, the Third Circuit has not decided whether materiality is a requirement of the False Claims Act. United States ex rel. Cantekin v. Univ. of Pittsburgh, 192 F.3d 402, 415 (3d Cir. 1999) (stating *in dicta* stated that there might not be a materiality requirement in the False Claims Act). A CID enforcement action is an unlikely scenario for resolution of that open issue in this circuit. See United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co., No. CIV. A. 94-7316, 2000 WL 1207162 *7 n.12 (E.D. Pa. Aug. 24, 2000) (refusing to decide whether False Claims Act contained materiality requirement at motion to dismiss phase of case).

[10]    The requirement that the CID to state the nature of the conduct constituting the false claims violation can be provided informally, such as through meetings and communication between counsel. Maccaferri Gabions, Inc. v. United States, 938 F. Supp. 311, 314-15 (D. Md. 1995) (relating to enforcement of Antitrust Division CID).

United States seeks by accurately stating that the United States seeks to inquire about how AdvancePCS uses its preferred drug formularies in its relationships with drug manufacturers, health plans, and pharmacies, as well as internal and external audits and document location information.  Pet. Setting Aside at 26.

Thus, the subject matter of the CIDs is not vague or staggeringly overbroad, as petitioners put it.  It is, however, about a subject which AdvancePCS has consistently refused to supply information without an enforcement action.

**D.    The CIDs Seek Testimony Relevant to the United States' Investigation**

The CIDs are enforceable because the information sought is relevant to the United States' ongoing investigation of AdvancePCS's alleged solicitation and receipt of secret payments from drug manufacturers for favorable treatment of certain brand name drugs in connection with AdvancePCS's services to health plans, including federal government health plans.  According to drug manufacturer representatives whom the United States has interviewed, the individuals who received the CIDs were involved in negotiating and administering the rebate agreements and the other special program agreements between the drug manufacturers and AdvancePCS for the brand name drugs on the preferred drug formularies.  Because they have been identified by reliable witnesses, the United States believes the CID recipients will have information relevant to its investigation.  Petitioners have not raised an argument that the CIDs do not seek information relevant to the investigation, and this requirement for subpoena enforcement does not appear to be in dispute.

E.    <u>Enforcing the CIDs Is Not An Abuse of the Court's Process</u>

Enforcing the CIDs would not be an abuse of this Court's process because no improper

purpose underlies the United States' conduct of the investigation.  Petitioners offer two

arguments to establish that the U.S. Attorney's Office has improperly obtained the CIDs, and

neither argument has any substance.

First, petitioners contend that the United States cannot seek testimony through CIDs when

a petition to enforce an administrative subpoena is pending.  Petitioners provide no support for

this argument because there is none.  Pet. Setting Aside at 27.  Administrative subpoenas and

CIDs applications for oral testimony are both legitimate investigative tools and can be used

simultaneously.  The United States' effort to use them both in this investigation was not, as

petitioners allege, an effort to circumvent the pending litigation regarding electronic mail

production, but rather to continue the investigation while that issue is pending before the Court.

Neither AdvancePCS nor petitioners can dictate to the United States how it will conduct its

investigation.  <u>See</u>, <u>e.g.</u>, <u>United States v. Educational Development Network</u>, 884 F.2d 737 (3d

Cir. 1989), <u>cert. denied</u>, 494 U.S. 1078 (1990) (U.S. Attorney's Office can properly gather

evidence through agency inspector general subpoenas as well as initiate the grand jury process);

<u>United States v. Aero Mayflower Transit Co.</u>, 831 F.2d 1142, 1146 (D.C. Cir. 1987) ("Justice

Department was free to guide or influence the Inspector General and his subpoenas 'so long as

the Inspector General's subpoenas seek information relevant to the discharge of his duties'").

Second, petitioners contend that Assistant U.S. Attorney James G. Sheehan, Civil

Division Chief of the United States Attorney's Office for the Eastern District of Pennsylvania,

believes that certain AdvancePCS's practices may be illegal or unethical and seeks to "dictate

health care policy" through the use of his position.  Pet. Setting Aside at 27.  The United States'

position is that it is investigating the solicitation and receipt of secret payments from drug

manufacturers to pharmacy benefit management companies, such as AdvancePCS, that might

result in the submission of false claims to the United States and violation of the Anti-Kickback

Act, 41 U.S.C. § 51, *et seq.*, as well as other federal laws.  As such, the United States's

investigation arises from legitimate concerns about AdvancePCS's financial relationships with

drug manufacturers.

In support of their abuse of process argument, petitioners seek discovery of

communications with the Attorney General regarding issuance of these CIDs.  Pet. Setting Aside

at 28.  Specifically, they want to know whether the CIDs were issued "in connection with a

legitimate investigation and whether the AUSA disclosed to the Attorney General the existence

and nature of the Pending Litigation regarding this matter and set forth a basis upon which False

Claims Act liability could exist."  Id. at 28-29.

In the absence of a "substantial demonstration" by petitioners that the United States is

abusing the Court's process by enforcing the CIDs, no discovery is warranted.  Markwood, 48

F.3d at 983.   Evidence of impropriety as opposed to an assertion of impropriety is necessary.

Id.[11]  Petitioners do not meet this standard.

---

[11]    Petitioners err in relying on Associated Container Transportation (Australia) Ltd. v. United States, 502 F. Supp. 505 (S.D. NY 1980), for the principle that as a matter of right discovery may be taken.  See Maccaferri Gabions,, 938 F. Supp. at 316 n.2 (in CID enforcement action, court does not agree with holding in Associated Container case, which it says has not obtained widespread acceptance); United States v. Seitz, No. MS2-93-063, 1993 WL 501817 *3 (S.D. Ohio Aug. 26, 1993) ("None of the legislative history cited by respondent nor the language of the statute demonstrates that a CID recipient is entitled to discovery as a matter of right").

## III.   CONCLUSION

For the reasons set forth in the Petition for an Order to Enforce the CIDs and this memorandum, the United States respectfully requests this Court to grant the petition and order petitioners to appear for the taking of oral testimony within 14 days or as directed by the United States false claims investigators.  Additionally, the United States respectfully requests the Court to deny petitioners' Petition for an Order Setting Aside the CIDs.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney


_____
JAMES G. SHEEHAN
Assistant United States Attorney
Chief, Civil Division


_____
BARBARA ROWLAND
SUSAN R. BECKER
Assistant United States Attorneys
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8200 Telephone
(215) 861-8349 Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the _____ day of May, 2002, I caused a true and correct copy of

the foregoing Petition for an Order to Enforce CIDs, Memorandum in Support Thereof and in

Opposition to Petitioners' Petition for an Order to Set Aside CIDs, to be served by first class

mail, postage prepaid, upon the following:

> Robert A Kauffman, Esq.
> Wayne C. Stansfield, Esq.
> Reed Smith Shaw & McClay
> 2500 One Liberty Place
> 1650 Market Street
> Philadelphia, PA 19103-7301
>
> Eugene Tillman, Esq.
> Eric A. Dubelier, Esq.
> Reed Smith Shaw & McClay
> 1301 K Street, N.W.
> Suite 1100 – East Tower
> Washington, D.C.  20005-3317

_____
Barbara Rowland